IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE O. ROBERTS | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 15-6629 |
| | : | |
| D.A. SETH WILLIAMS, et al. | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE  December 31, 2018
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This case arises from Plaintiff Jermaine O. Roberts' ("Roberts" or "Plaintiff") April 3, 2013 arrest for two robberies in south Philadelphia which the District Attorney ultimately chose not to prosecute. On December 13, 2013, after the charges against him were dropped and proceeding *pro se*, Roberts filed this civil rights action under 42 U.S.C. § 1983 (hereinafter "§ 1983") naming the City of Philadelphia (the "City"), the District Attorney ("D.A.") Seth Williams, Assistant District Attorney ("ADA") Elizabeth Kotchian, Detectives Matthew Funk ("Funk"), Michael Fitzgerald ("Fitzgerald"), James P. Powell, Amy Maccari, Angel Gonzales, Martin Connors III, and Police Officer Christian Valentine as defendants and alleging that he was falsely arrested and maliciously prosecuted as a result of their conduct. All Defendants except Detectives Funk and Fitzgerald have been dismissed from the case. (Docs. Nos. 15, 29, 31.) The parties have consented to conduct further proceedings before a Magistrate Judge (Doc. 42). We have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

Presently before the Court is remaining Defendants' Motion for Summary Judgment on all claims, which was filed on November 29, 2018 ("Def. Mot," Doc. 62). Plaintiff's have filed their Response in Opposition to Defendants' Motion. ("Pl. Resp." Doc. 63.) For reasons set forth below, we will grant summary judgment to these remaining Defendants on all outstanding claims.

## II. PROCEDURAL HISTORY

Plaintiff filed his *pro se* complaint on December 7, 2015 while incarcerated at Pennsylvania State Correctional Institution in Mercer, Pennsylvania for an unrelated offense. ("Complaint," Doc. 1-1.) His case was assigned to the Honorable Mitchell S. Goldberg, who dismissed the claims against DA Williams and ADA Kotchian on January 7, 2015 because "prosecutors are absolutely immune from liability under § 1983 stemming from acts taken 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.'" (*See* Doc. 4.) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). On February 24, 2016, the City refused service on behalf parties Plaintiff identified as Detectives Maccari and Gonzales as it could not initially identify them in their records. The other individual defendants as well as the City were properly served, and on March 14, 2017, Detective Funk filed an answer to the complaint, while Detective Powell, Detective Fitzgerald, Police Officer Valentine, Detective Connors, and the City filed motions to dismiss, which were granted as to all Defendants except Detective Fitzgerald in a July 6, 2016 Order. (Doc. 15.) Detective Fitzgerald filed his answer on August 29, 2016. (Doc. 18.) After Detectives Maccari and Gonzales were identified and accepted service, they filed motions to dismiss, which were granted on August 3, 2017. (Doc. 29.)

Plaintiff subsequently retained counsel Steven F. Marino, who entered his appearance on January 17, 2018. (Doc. 38.) On June 14, 2018, the parties consented to have all further proceedings referred to a magistrate judge and the case was referred to us. (Doc. 42.) Plaintiff

2

filed a September 20, 2018 motion for reconsideration of the District Court's July 6, 2016 Order dismissing the City and other individual defendants, which we denied in a November 2, 2018 Order. (Doc. 58.) We granted his motion for leave to amend the complaint, however, and permitted him to plead pendent related state law claims. (Doc. 57.) Detectives Fitzgerald and Funk filed an answer to the amended complaint on November 19, 2018. (Doc. 61.) In his amended complaint, Plaintiff asserts that Detectives Fitzgerald and Funk are liable under § 1983 for unlawful arrest and malicious prosecution and for related tort claims under Pennsylvania law. (Compl., ¶ 69-113.) The remaining Defendants' Motion for Summary Judgment is now fully briefed and ripe for resolution.

## III. UNDISPUTED MATERIAL FACTS [1]

We begin with discussion of the two robberies that led to Roberts' arrest. Then, we turn to the affidavit of probable cause presented for his arrest and the events leading up to the dismissal of the charges.

### A. March 10, 2013 Robbery

On Sunday, March 10, 2013, a man walked into the Metro PCS Store at 2101 Oregon Avenue in south Philadelphia and inquired about cell phones. (Doc. 62-3 at 3). A Metro PCS employee brought the man over to the glass counter top to show him some options. (*Id.*) After browsing for a couple minutes, "suddenly the male put his hand inside his jacket pocket to simulate a gun [and] walked around the counter and demanded the money from the register." (*Id.*) He took over $500 and fled the scene. (*Id.*)

Detective Funk interviewed the Metro PCS employee when he arrived at the scene. She

---

[1] The facts set forth herein come from the uncontroverted exhibits provided by Defendants and/or from deposition testimony taken of Plaintiff Roberts and Defendant Detective Fitzgerald.

stated that the offender was a Black male, approximately 30-40 years old, and had a "slight lazy eye." (*Id.*) She told Funk that the man had placed his right hand on the glass counter top as she showed him phones. (*Id.*) After Detective Funk reviewed the store's surveillance video, he took fingerprints from glass counter top in the area where the man had placed his hand. (*Id.*)

Three days later, on March 13, 2013, Detective Funk was notified by the Police "identification/latent print unit" that two prints came back with a positive identification from the Police arrest databases. (*Id.*) The two prints, a right finger and a right palm print, both belonged to Roberts. (*Id.*) Detective Funk then created an eight person photo line-up, which included Roberts' photo, and called the Metro PCS employee to the station to view it. (*Id.*) The employee was unable to identify the offender, but stated that the men in the photo array were "a little thinner in the face" than the offender. (*Id.*) The Detectives noted that the photo of Roberts "was taken over 18 months ago." (*Id.*)

The affidavit states that the Detective interviewed the employee a second time on March 16, 2013. She stated at that time that she cleans the glass counter top daily, but that she had not cleaned it the day of the offense, a Sunday. She then stated that her manager and another co-worker had worked on Saturday, the day before the robbery. The Detectives interviewed them and learned from the manager that the employees clean the glass countertop every day. The co-worker then added that she did clean the glass during that Saturday shift. She and the manager both denied seeing anyone with Roberts' likeness at the store on Saturday. She further checked the national databases to see if Roberts had made any purchases through Metro PCS or if he had any Metro PCS phone accounts. The only Jermaine Roberts that appeared in the search was a minor. All of these particulars appear in the affidavit. (Doc. 62-3 at 3-4)

**B. March 18, 2013 Robbery**

On March 18, 2013, a man entered the Cricket Wireless store at 1422 Snyder Avenue in south Philadelphia, immediately walked behind the counter and, simulating a gun in his coat pocket, ordered the Cricket employee to open the register. (Doc. 62-3 at 4). He "bumped" the employee out of the way of the register and took $1,300 in cash. (*Id.*) He ordered the employee to go to the rear of the store and then fled. (*Id.*)

Detective Fitzgerald responded to the scene. He interviewed the Cricket employee, who stated that the offender was a Black male, between 30 and 40 years old, had a "heavy build," was approximately 250 pounds, was wearing a black hooded sweatshirt beneath a black "puffy jacket," and had a lazy eye. (*Id.*)

The following day, Detective Fitzgerald learned of Detective Funk's investigation and of the March 10 robbery. Having learned that the police had identified fingerprints implicating Roberts, he returned to the Cricket store on March 21, 2013, and showed the Cricket employee an eight-person photo array that included Roberts' photo. (*Id.*) She identified Roberts' photo and "stated that he was the male who had robbed her" on March 18, 2013. (*Id.*) All of these particulars appear in the affidavit.

### C. Affidavit of Probable Cause, Arrest and Nolle Prosse

Based on this identification, on March 22, 2013, Detective Fitzgerald submitted an affidavit of probable cause for Roberts' arrest to a magistrate who issued a warrant for his arrest the same day upon the strength of the affidavit. [2]

Roberts learned of the warrant from his attorney who he had engaged in an unrelated matter. (Doc. 62-1 at 7.) He turned himself in on April 3, 2013. (*Id.* at 8.) On December 12,

---

[2] Although Detective Fitzgerald did not respond to the first robbery, he stated that the discussed the circumstances of the incident with Detective Funk in preparing the affidavit of probable cause. (Doc. 63-1 at 44.)

2013, after Plaintiff had been in custody for nearly nine months, the District Attorney *nolle prossed* all charges.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable juror could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

The moving party bears the initial burden of "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to successfully oppose a properly supported motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In reviewing the summary judgment record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not make credibility determinations or weigh the evidence in reaching its conclusion. *See Anderson*, 477 U.S. at 255 (observing that these are jury functions).

## V. DISCUSSION

By this Civil Action, Jermaine Roberts brings federal § 1983 claims for false arrest and

malicious prosecution in violation of the Fourth and Fourteenth Amendments, and related pendant Pennsylvania state law claims. We first set forth the law supporting these claims, and then discuss the significance of probable cause in analyzing their merit.

### A. The Law of Malicious Prosecution and Unlawful Arrest

Under § 1983, a Fourth Amendment malicious prosecution claim requires the plaintiff to prove the absence of probable cause. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Pennsylvania law also requires the plaintiff to establish a lack of probable cause in a malicious prosecution action. *Bradley v. Gen Acc. Ins. Co.*, 778 A2d 707, 710 (Pa. Super. 2001). Similarly, in a § 1983 claim of unlawful (or false) arrest, the plaintiff must show he was arrested without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."); *but see Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) ("Where a police officer causes an arrest to be made pursuant to a warrant which he obtained on the basis of statements he knew to be false or on the basis of statements he makes in reckless disregard of the truth, a plaintiff may recover damages under section 1983 for 'unreasonable seizure' of his person in violation of the Fourth Amendment.") Under Pennsylvania law, there is no unlawful arrest where a police officer makes the arrest based upon probable cause, and thus plaintiffs must show a lack of probable cause for their claim to go forward. *Renk v. City of Pittsburgh*, 527 Pa. 68, 641 A.2d 289, 293 (1994).

### B. Probable Cause

We consider at this point the question of whether any issues of material fact exist to support Plaintiff's position that his arrest was initiated without probable cause as reflected in the affidavit

sworn to by Detective Fitzgerald and presented to the Magistrate. To surmount this obstacle, Plaintiff must show that probable cause was lacking based on an objective standard of reasonableness as set out in the content of the affidavit or that the affiant intentionally and deliberately omitted some material fact known to him at the time.

Probable cause exists where a prudent officer would believe, based on the facts and circumstances at hand, that a suspect had committed or was committing an offense. *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997). While the existence of probable cause is usually a question for a jury, the Court may conclude as a matter of law that probable cause existed if the evidence, viewed in the light most favorable to plaintiff, would not support another factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt. *Nimley v. Baerwald*, No. 02-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (citations omitted). The Pennsylvania standard for the existence of probable case is the same as the federal standard. *See Renk*, 641 A.2d at 293 (Probable cause is present "when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.") (internal quotation omitted.) Moreover, when a warrant, on its face, establishes probable cause, a litigant must show that the defendant "knowingly and deliberately, or with a reckless disregard for the truth," made false statements or omissions which are "material, or necessary, to the finding of probable cause." *Warner v. McCunney*, No. 05-1248, 2005 WL 2811738, at *3 (E.D. Pa. Oct. 27, 2005) (quoting *Wilson v. Russo*, 212 F.3d 781,786 (3d Cir. 2000)).

We begin with a review of the warrant. In doing so, we note that the affidavit recites in detail the interviews Detectives Funk and Fitzgerald personally took of the victim-employees at the first and second robberies, respectively. (Doc. 62-3.) As Detective Fitzgerald wrote:

> The [store associate] stated she was working her shift at the Metro PCS store when a black male came into her store and started to inquire about cell phones. The male came up to her glass counter and for a couple minutes the complainant pulled out different cell phones to show to the customer. Suddenly the male put his hand into an inside jacket pocket, to simulate a gun, walked around the counter and demanded the money from the register.

(*Id.* at 3.) She identified the offender as "approximately 30-40 years old" with a "slight lazy eye," and stated further that he "put his right hand on the glass counter as [she] was showing him phones." (*Id.*) Detective Funk reviewed the surveillance video that captured the incident and noted that it corroborated her account regarding his hand placement. He then "finger printed the glass counter top in the area he observed (via the surveillance video) the offender touching with his right hand and submitted several print cards to the identification/latent print unit." (*Id.*) On March 13, 2013, he was notified that the two prints matched those of Jermain[e] Roberts. (*Id.*) He prepared an "eight person photo line-up including the suspect and had the complainant view it at South Detective Division on 3/16/13. The suspect (sic) viewed the lineup and was unable to identify her offender. She states the males in the photo array were a little thinner in the face th[a]n her offender." (*Id.*) Detective Fitzgerald included in the affidavit that "the suspects photo was taken over 18 months ago." *(Id.)*

The account of the second robbery is similarly detailed. After interviewing the sales associate who had been working at the time of the robbery, Detective Fitzgerald wrote:

> [The offender] walked behind the counter while holding his hand in his coat pocket as if he had a gun . . . . [He] bumped the complainant out of the way and took the cash from the [box]. . . . The complainant described the offender as a B/M, mid 30's, heavy build, 250 lbs, wearing a black puffy jacket, black hoodie under the jacket, and a hat that covered his forehead, black jeans, and that the offender had a lazy left eye.

9

*(Id.* at 4.) Detective Fitzgerald subsequently learned of Detective Funk's investigation, the positive fingerprint identification, and the photo array. (*See id.*) He stated that he "showed a photo array consisting of 8 photos including a photo of Jermaine Roberts . . . to the complainant," who "identified the photo of [ ] [sic] Jermaine Roberts […stating that…] he was the male who had robbed her on 03-18-13CC." (*Id.*)

We have no difficulty concluding that based on the discovery of Roberts' fingerprints at the scene of the first robbery coupled with the positive photo identification by the sales associate from the second robbery that "a prudent officer would believe, based on the facts and circumstances at hand," that Roberts had committed an offense. *See Sharrar*, 128 F.3d at 817-18. In an effort to refute the existence of probable cause, however, Plaintiff argues that Detective Fitzgerald deliberately omitted exculpatory evidence from the affidavit of probable cause. (Pl. Br. at 14-16.) His argument is without merit.

In support of his claim, Roberts primarily focuses on the difference in physical characteristics between him and the offender as described by the eyewitness accounts. (Pl. Resp. at 19-20.) He asserts that the offender was described as 6'2" tall, weighing approximately 250 pounds with a "heavy build" and a "lazy left eye," while he is only 5'10" tall, thinly built and 160 pounds with no lazy eye. (Pl. Resp. at 15.) These physical discrepancies, he alleges, give "doubt [to] the accuracy of the information [Detective Fitzgerald] reported in the Affidavit of Probable Cause in support of [the] arrest." (Pl. Resp. at 15.)

We conclude that no reasonable jury could find that Detective Fitzgerald intentionally or recklessly made certain misrepresentations or omissions in the affidavit that were material to a finding of probable cause. Contrary to Plaintiff's assertions, in fact, Detective Fitzgerald included the relevant physical descriptions of the offender and Roberts in the affidavit. He noted that the

Metro PCS store offender "had a slight lazy eye" and that the employee was "unable to identify her offender" based on the photo array. (Doc. 62-3 at 3.) With regard to the Cricket Wireless robbery, Fitzgerald noted that "the complainant described the offender as a B/M, mid 30's, heavy build, 250 lbs, wearing a black puffy jacket, black hoodie under the jacket" and that "the complainant identified the photo of Jermaine Roberts and stated that he was the male who had robbed her." (*Id.* at 4.) Moreover, Detective Fitzgerald included Roberts' physical description: 40 years old, 5'10" inches tall and weighing 160 pounds. (Doc. 62-3 at 5.) Thus, the Magistrate was presented with all evidence material to her determination. We decline to conclude that probable cause was lacking merely because of the discrepancy in physical characteristics when the warrant, on its face, established probable cause and was devoid of any material omissions or false statements.

The District Attorney ultimately dropped the charges when, it "determined after evaluating the Plaintiff's appearance that the Plaintiff's physical characteristics did not resemble the description of the robbery suspect." (Pl. Resp. at 17.) Plaintiff ask us to accept the proposition that the decision to *nolle prosse* the case necessarily means probable cause for the arrest was lacking.

Roberts argument is misplaced. Our inquiry is strictly limited to whether the police had probable cause to arrest Plaintiff on March 22, 2013 when Detective Fitzgerald swore out the affidavit. *See Dowling*, 855 F.2d at 141. Indeed, Plaintiff does not contest any of the facts that *were* included in the affidavit detailing the robberies. Such facts included the fingerprint match, the positive photo identification, and a presentation of the physical characteristics as to Roberts and the offender. These facts, standing alone, unequivocally create probable cause for the Defendant Detectives to believe that Plaintiff committed the suspected crimes. *See Nimley*, 2004

11

WL 1171733, at *7 ("Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt.").

We accept that Roberts has brought focus upon factors that may have brought into question the credibility of the eyewitnesses' identification of the complainant in the March 10, 2013 robbery. Our task is not to assess that credibility but rather to determine whether the information presented to the Magistrate established probable cause, if it does, and whether Plaintiff is able to show a genuine issue of material fact on the question of whether Detective Fitzgerald as the affiant failed to disclose material information.

While Plaintiff asserts that certain police department documents that were identified were not produced he has failed to identify any evidence to indicate that the detectives intentionally or deliberately withheld any material information in the affidavit. Nor has he identified any evidence to create a genuine issue of material fact on the element of probable cause. *See El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (mere allegations are insufficient to oppose summary judgment); *Domenech v. City of Philadelphia*, No. 06-1325, 2009 WL 1109316, at *5 (E.D. Pa. April 23, 2009) ("When the burden [of summary judgment] shifts to the non-moving party, it imposes an affirmative obligation to identify the relevant evidence it has adduced.") (citations omitted). Notwithstanding this failure, the uncontested evidence shows that it was objectively reasonable for Detectives Funk and Fitzgerald to conclude that Roberts had committed the robberies given the fingerprint match and the positive photo identification. Accordingly, summary judgment must be granted in favor of Defendants on all claims in that the arrest was supported by probable cause and Plaintiff has failed to establish an issue of material fact as to whether Detective Fitzgerald intentionally or recklessly made any material misrepresentations or

12

omissions in his affidavit.

## VI. CONCLUSION

In that Plaintiff has failed to establish a lack of probable cause on any willful, intentional withholding of relevant information by the Detectives, we will grant Summary Judgment.

**BY THE COURT:**


_/s/ David R. Strawbridge, USMJ_____
David R. Strawbridge
United States Magistrate Judge